IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

EQUAL EMPLOYMENT OPPORTUNITY                                          PLAINTIFF
COMMISSION

V.                                                             NO. 4:16-CV-199-DMB-JMV

FAURECIA AUTOMOTIVE SEATING,
LLC                                                                    DEFENDANT

**ORDER TRANSFERRING CASE**

This employment discrimination action is before the Court on Faurecia Automotive Seating, LLC's motion to transfer venue. Doc. #11.

**I
Procedural History**

On September 30, 2016, the Equal Employment Opportunity Commission filed a complaint in this Court against Faurecia Automotive Seating, LLC ("Faurecia LLC") "to provide appropriate relief to Neda Sykes-Travis, Sadie Heard, Sheila Green, and a class of at least 8 other aggrieved individuals … who were adversely affected by such practices." Doc. #1 at 1. The complaint alleges that Faurecia LLC acquired Johnson Controls, Inc. ("JCI") in Madison, Mississippi, and then violated the Americans with Disabilities Act ("ADA") by failing to retain the claimants, who were then employees at JCI. *Id.* at ¶ 12–14.

Faurecia LLC filed an answer to the complaint on January 13, 2017. Doc. #9. In addition to asserting numerous affirmative defenses, the answer states that "[t]he EEOC has sued the wrong Faurecia entity. The allegations made in the Complaint are directed to Faurecia Madison Automotive Seating, Inc., a wholly separate entity from Faurecia Automotive Seating, LLC." *Id.* at 1 n.1. The same day, Faurecia LLC filed a motion to transfer venue to the Southern District of Mississippi, arguing, among other things, that "every single claimant resides in the

Southern District." Doc. #11; Doc. #13 at 2. The EEOC responded in opposition on January 26, 2017, Doc. #15; and Faurecia LLC replied on February 2, 2017, Doc. #17.

On June 29, 2017, the EEOC filed a motion to amend its complaint to add Faurecia Madison Automotive Seating, Inc. ("Faurecia Inc.") as a defendant. Doc. #35. United States Magistrate Judge Jane M. Virden granted the motion on June 30, 2017. Doc. #36. The EEOC filed its amended complaint the same day. Doc. #37. Faurecia Inc. and Faurecia LLC (collectively, "Faurecia") filed separate answers to the amended complaint on July 14, 2017. Doc. #38; Doc. #39.

## II
## Analysis

In its motion, Faurecia seeks to transfer this action to the Southern District of Mississippi pursuant to 28 U.S.C. § 1404(a). Doc. #11 at ¶ 4. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Generally, when considering a motion to transfer brought under § 1404(a), a district court must conduct two inquiries. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). First, the court must ask "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Id*. If the proposed district is a place where the claim could have been originally filed, the court must ask whether transfer is justified by the convenience of the parties and witnesses and would be in the interest of justice. *Id*.

### A. Possible Venue

Congress has adopted "special venue provisions" for cases brought under the ADA. *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003). The relevant provision provides:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. *Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office*. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

*Id.* at 432–33 (quoting 42 U.S.C. § 2000e–5(f)(3)) (emphasis added). The statement that an action may be brought in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed" has been interpreted to authorize an action "anywhere in the relevant state." *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1248 (11th Cir. 1991). Accordingly, "venue need not be laid in the very district in which the challenged practice was committed. It is sufficient that the forum district simply be in the same state as that in which the unlawful practice was committed." 14D FED. PRAC. & PROC. JURIS. § 3825 (4th ed.). It is clear that this action, which is based on alleged unlawful employment practices in the state of Mississippi, specifically in Madison, Mississippi, could have been brought in the Southern District of Mississippi.

### B. Convenience and Interest of Justice

While courts have traditionally considered § 1404(a)'s reference to convenience and the interest of justice to mandate separate inquiries,[1] the Fifth Circuit has collapsed the two inquiries such that:

> A motion to transfer venue pursuant to § 1404(a) should be granted if "the movant demonstrates that the transferee venue is clearly more convenient," taking into

---

[1] *See, e.g., Res. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

consideration (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law".

*In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). The first four of these factors concern "private interest factors;" the second four concern "public interest factors." *In re Volkswagen of Am., Inc.* 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

Where, as here, the action is subject to the special venue provision of 42 U.S.C. § 2000e–5, a district court should conduct the above inquiry in light of the four "venue factor[s] in the special venue statute:" (1) where the wrongful employment action was allegedly committed; (2) the location of the relevant employment records; (3) where the aggrieved person would have worked but for the wrongful employment action; and (4) the location of the respondent's principal office. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("Where relevant employment records are maintained and administered is expressly stated as a venue factor in the special venue statute and should be weighed by a District Court in evaluating the 'interest of justice' aspect of the motion to transfer.").[2]

### 1. Factor 1: relative ease of access to sources of proof

The first factor focuses on the location of the relevant "documents and physical

---

[2] The EEOC, citing out-of-district authority, argues that the special venue statute serves to increase the burden on a § 1404(a) movant in an employment discrimination case. The Fifth Circuit seemed to reject this argument in *Horseshoe Entertainment* when it noted that, under the special venue statute, a plaintiff's choice of forum is not entitled to "decisive weight." 337 F.3d at 434. Relying on this language, and § 2005e-5(f)'s specific reference to § 1404(a), United States District Judge Phillip R. Martinez recently held that "Plaintiff's choice of forum, in the context of Fifth Circuit precedent, is not entitled to greater deference merely because Plaintiff brings a civil rights complaint." *Coleman v. Trican Well Serv.*, 89 F.Supp.3d 876, 881 (W.D. Tex. 2015). This Court finds this reasoning persuasive and concludes that, apart from adding "statutory factors," § 2005e-5(f)(3) does not alter a movant's burden under § 1404(a).

evidence" relative to the transferee and transferor venues. *Volkswagen II*, 545 F.3d at 316. Faurecia argues that because Faurecia and the EEOC are each located in the Southern District, all relevant documents are located in the Southern District. Doc. #13 at 5. The EEOC does not dispute that it or Faurecia are located in the Southern District. Rather, it argues that this factor should be given little to no weight because: (1) the relevant documents are likely in an electronic format; (2) Faurecia has not identified specific documents; and (3) "there has been no showing that the records in this case are so voluminous their transport is a major undertaking." Doc. #16 at 7–8 (internal quotation marks omitted).

First, while at one time some district courts in this circuit held that "the accessibility and location of sources of proof should weigh only slightly ... due to advances in copying technology and information storage,"[3] the Fifth Circuit has reaffirmed that "the sources of proof requirement is a meaningful factor in the analysis" and that "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. Based on this authority, it is clear that, standing alone, the electronic availability of the various documents does not lessen the weight afforded to the first factor. *See, e.g. Law v. Sessions*, No. 4:16-cv-2799, 2017 WL 2405331, at *2 (S.D. Tex. June 2, 2017) ("Plaintiff indicates that most documents are stored electronically and can be transferred via email, diminishing the weight of this factor. But the Fifth Circuit has explicitly instructed District Courts not to follow the reasoning propounded by Plaintiff.") (citing *Volkswagen II*).

Second, contrary to the EEOC's contention, Faurecia, in its memorandum and reply, has

---

[3] *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 778 (E.D. Tex. 2000); *see Shoemake v. Union Pac. R.R. Co.*, 233 F.Supp.2d 828, 834 (E.D. Tex. 2002).

identified specific categories of documents relevant to the litigation in this case. Specifically, Faurecia has identified "employment files, communications, evaluations, payroll records, and policies and handbooks" located at its Madison, Mississippi, office, Doc. #13 at 5; and "personnel and medical files" in the possession of Jackson Controls, Inc., in Jackson, Mississippi, "upon which Faurecia allegedly relied to discriminate against the Charging Parties," Doc. #17 at 5. The EEOC has not cited any authority which would suggest that these identifications are insufficient under the first factor.

Third, the EEOC, argues, without response by Faurecia, that the first factor should be given little weight because Faurecia has not argued or introduced evidence demonstrating that the identified documents are voluminous. Doc. #16 at 8 (citing *Gardipee v. Petro. Helicopters, Inc.*, 49 F.Supp.2d 925, 931 (E.D. Tex. 1999)). The EEOC is correct that district courts in this circuit, before and after *Volkswagen II*, have held that "the location of books and other records is usually given little weight, unless the documents are so voluminous that their transport is a major undertaking." *Moreno v. Poverty Point Produce, Inc.*, 243 F.R.D. 265, 273 (S.D. Tex. 2007); *see Francis v. Api Tech. Servs., LLC*, No. 4:13-cv-627, 2014 WL 11462447, at *8 (E.D. Tex. Apr. 29, 2014) (same). To the extent the ultimate § 1404(a) inquiry depends on the convenience of the parties, a focus on the actual inconvenience caused by the location of the books and documents strikes this Court as the proper approach. Accordingly, because Faurecia has not shown that the location of the documents would amount to a major undertaking, the first factor is entitled to only little weight. *See generally* 15 Fed. Prac. & Proc. Juris. § 3853 (4th ed.) ("[A] general allegation by the moving party that transfer is necessary under Section 1404(a) because of the location of books and records will not prevail.").

6

### 2. Factor 2: availability of compulsory process

"The second private interest factor is the availability of compulsory process to secure the attendance of witnesses." *Volkswagen II*, 545 F.3d at 316. Generally, this factor is weighed by comparing the "absolute subpoena power," defined as the power to compel a non-party witness to testify both at trial and a deposition, of the transferor and transferee districts. *See In re Hoffman-La-Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("Because the Eastern District of Texas does not have absolute subpoena power over Dr. Chang, … and because the Eastern District of North Carolina does have absolute subpoena power over at least four non-party witnesses, the district court should have considered this factor in favor of transfer.") (applying Fifth Circuit law); *Verde v. Stone Ridge, Inc.*, No. 6:14-cv-157, 2014 WL 12489758, at *3 (E.D. Tex. Aug. 25, 2014) (second factor neutral when both courts had absolute subpoena power).

Ordinarily, absolute subpoena power is limited to 100 miles from the relevant courthouse. Fed. R. Civ. P. 45(c). However, a court may exercise absolute subpoena power over any person within the same state as the court, so long as the "person resides, is employed, or regularly transacts business in person [and] the person … is a party or a party's officer …." *Id*.

In seeking transfer, Faurecia argues that, "[t]o [its] knowledge, all non-parties that will testify in this case live or work well within 100 miles of the Southern District." Doc. #13 at 6. The EEOC responds that Faurecia has failed to describe the substance of the expected testimony and that "[o]f those [non-party witnesses] that are relevant and essential to the claims and defenses in this lawsuit, the majority are subject to subpoena regardless of whether they reside within the 100-mile radius of the Court" because such persons "are under the control of Faurecia and the Commission."[4] Doc. #16 at 8–10.

---

[4] Citing an unpublished district court case from the Middle District of Alabama, the EEOC argues in a footnote that

Because compulsion will only be necessary for unwilling witnesses, "in consideration of [the second] factor, the Court should only consider a district court's ability to compel the appearance of non-employee witnesses who are unwilling to testify absent a subpoena." *U.S. United Ocean Servs., LLC v. Powerhouse Diesel Servs., Inc.*, 932 F.Supp.2d 717, 731 (E.D. La. 2013). The Court agrees with the EEOC that Faurecia has failed to show that any of the prospective witnesses would be unwilling to testify absent a subpoena. Accordingly, the Court deems this factor neutral. *See id*. ("As neither party has submitted evidence that its witnesses would be unwilling to testify in either venue, this factor is neutral.").[5]

### 3. Factor 3: cost of attendance of willing witnesses

The cost of attendance for willing witnesses is "probably the single most important factor in the transfer analysis." *Smith's Consumer Prods., Inc. v. Fortune Prods., Inc.*, No. 3:14-cv-627, 2015 WL 1037419, at *4 (N.D. Tex. Mar. 9, 2015). While the convenience of party witnesses is a consideration in the third factor, "[i]t is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Watson v. Fieldwood Energy Offshore, LLC*, 181 F.Supp.3d 402, 410 (S.D. Tex. 2016). "Particularly, it is the location of key, non-party witnesses

---

"[e]ven where witnesses reside outside the subpoena range of this Court, such an argument is not persuasive because the witnesses may testify by deposition." Doc. #16 at 10 (quotation marks omitted). The Court rejects this argument as incompatible with the "absolute subpoena power" approach employed by courts in this circuit.

[5] The Court is aware that some courts in this circuit have applied the second factor without respect to the actual need for a subpoena. *See MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F.Supp.2d 647, 671 (S.D. Miss. 2013). To the extent this more limited inquiry is untethered to the actual impact on the litigation, this Court deems the approach inconsistent with the ultimate inconvenience inquiry. *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S.Ct. 568, 581 n.6 (2013) (referring to "availability of compulsory process for attendance of unwilling ... witnesses); *see also Trover Grp., Inc. v. Tyco Int'l, Ltd.*, No. 2:13-cv-52, 2014 WL 12596722, at *3 (E.D. Tex. Apr. 11, 2014) (factor neutral where only non-employee witness was willing to testify); *PrevMED, Inc. v. MNM-1997, Inc.*, No. 3:14-cv-3960, 2015 WL 5771822, at *4 (N.D. Tex. Sep. 30, 2015) ("In light of defendants' failure to identify any nonparty witnesses for whom compulsory process would be necessary, the court finds this factor to be neutral."); *FC Inv. Grp. LC v. Lichtenstein*, 441 F.Supp.2d 3, 14 (D.D.C. 2006) ("[A] defendant must show that witnesses would be unwilling to testify [in the current district]. Otherwise, it is assumed that the witnesses will voluntarily appear.") (internal citation omitted).

8

that dominates." *Id*. (quotation marks omitted). To designate a potential witness as "key" under the inquiry, "[t]he movant must specifically identify the key witnesses and outline the substance of their testimony." *Id*. Once relevant witnesses have been identified, courts follow the 100-mile rule set out in *Volkswagen I*, which states: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317.

Faurecia argues that "[i]t is absolutely undisputed that all of the Claimants for which the EEOC seeks recovery live or work in the Southern District." Doc. #13 at 7. Additionally, as quoted above in reference to the second factor, Faurecia contends that "[t]o Faurecia's knowledge, all non-parties that will testify in this case live or work well within 100 miles of the Southern District." *Id*. at 6. The EEOC responds that "Faurecia fails to identify any nonparty witnesses who would be inconvenienced by trial in the Northern District of Mississippi. While it offers names of individuals, it fails to identify any key witnesses and the substances of their testimony." Doc. #16 at 10–11. In reply, Faurecia points the Court to "Exhibit 'A' for a list of all expected witnesses and their expected testimony." Doc. #17 at 7 n.8. However, no such document is attached.

In evaluating convenience, the Court begins by noting that the distance between the federal courthouse in Jackson[6] and the federal courthouse in Greenville is approximately 120 miles. Based on this Court's review of the record, it seems clear that most, if not all,[7] of the

---

[6] Although Faurecia's motion does not seek transfer to a specific division of the Southern District, its memorandum refers to the EEOC's proximity to the Southern District's Jackson courthouse. Doc. #13 at 5 & n.6.

[7] According to the EEOC, at least one potential witness, Faurecia's Director of Human Resources, lives in Michigan. Doc. #16 at 9.

potential witnesses in this case, including the three relevant charging parties (Neda Sykes-Travis, Sadie Heard, and Sheila Green) and various non-party JCI employees, reside or work in the Southern District. It seems equally clear that few, if any, potential witnesses reside or work in the Northern District. Because the vast majority of potential witnesses reside or work in the Southern District, the Court concludes that the third factor weighs in favor of a transfer. However, because Faurecia has failed to show or argue that any of these witnesses may be deemed key non-party witnesses, the Court gives this factor little weight. *See Watson*, 181 F.Supp.3d at 410.

### 4. Factor 4: other practical problems

The fourth factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." Both parties assert, and this Court agrees, that this factor is neutral.

### 5. Factor 5: court congestion

The focus of the first public interest factor (the fifth factor) is "not whether transfer will reduce a court's congestion but whether a trial maybe speedier in another court because of its less crowded docket." *Watson*, 181 F.Supp.3d at 412. "In analyzing this factor courts often consider the median time interval from case filing to disposition [by trial]." *Id*. Other courts have focused on the median time interval between filing and disposition generally. *See, e.g., Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, No. 13-778, 2014 WL 4986674, at *11 (M.D. La. Sep. 29, 2014); *LT Tech, LLC v. FrontRange Sols. USA Inc.*, No. 3:13-cv-1901, 2013 WL 6181983, at *6 (N.D. Tex. Nov. 26, 2013). Still other courts consider the median time interval to disposition by court action. *See, e.g., Foote v. Chu*, 858 F.Supp.2d 116, 123 (D.D.C. 2012). To the extent the focus of this factor is speedy disposition of a case, the Court deems the most

relevant statistic to be the median time between filing and disposition, irrespective of the method of disposition.

According to the most recent statistics, the Northern District has a median disposition time of 9.0 months, while the Southern District has a median disposition time of 10.6 months. United States Courts, *Statistical Tables for the Federal Judiciary*, tbl. C-5 (December 31, 2016).[8] Given the small difference between these two numbers the Court deems factor five neutral. *See Sargent v. Sun Trust Bank, N.A.*, No. 3:03-cv-2701, 2004 WL 1630081, at *4 (N.D. Tex. July 20, 2004) (1.5 month difference between disposition times "immaterial").

### 6. Factor 6: local interest

The Fifth Circuit has recognized a "local interest in having localized interests decided at home." *Volkswagen II*, 545 F.3d at 317. Generally, in the employment context, the local interest will be served by transferring the case to the venue where the adverse employment action occurred or where the plaintiff resides. *See Watson v. Earthbound Holding, LLC*, No. 3:12-cv-295, 2012 WL 2367906, at *1 (S.D. Miss. June 21, 2012) ("Transferring the case to the division where Watson's termination occurred will serve 'the local interest in having localized interests decided at home.'"); *Lee v. Waste Mgmt. of Tex., Inc.*, No. 07-2080, 2008 WL 346374, at *2 (S.D. Tex. Feb. 6, 2008) ("The Western District, particularly San Antonio, has a much greater local interest than the Southern District in protecting the employment rights of residents of San Antonio."); *Villanueva v. Texas Tech Univ.*, No. 4:10-CV-766, 2010 WL 5110100, at *2 (N.D. Tex. Dec. 8, 2010) (local interest favored Lubbock Division where "[t]he alleged unlawful employment practices about which plaintiff complains were perpetrated by a Lubbock employer, through its decisionmakers who are Lubbock residents, against plaintiff, who, at the time, was

---

[8] Available at http://www.uscourts.gov/sites/default/files/data_tables/stfj_c5_1231.2016.pdf.

also a Lubbock resident.").

As explained above, the allegedly discriminatory acts in this case occurred in the Southern District and were directed at residents of the Southern District. Notwithstanding the locus of the charging parties and the discriminatory acts, the EEOC argues that this factor does not warrant a transfer because the Northern District also has a connection to the case and because the case involves "issues of general public importance." Doc. #16 at 11–12.

As support for its argument that the Northern District has a local interest in this litigation, the EEOC cites *Wallace v. Board of Supervisors for the University of Louisiana System*. Doc. #16 at 12. In *Wallace*, a gender discrimination case, the district court held that an "adjacent" district had a localized interest in the litigation where the allegedly discriminatory school drew students and employees from the adjacent district and maintained satellite offices in the adjacent district. No. 14-657, 2015 WL 1970514, at *8 (M.D. La. Apr. 30, 2015). While *Wallace* is correct that more than one district can have a localized interest in the subject matter of a litigation, the EEOC, unlike the plaintiff in *Wallace*, offers no argument as to *why* the Northern District has an interest here.[9] Accordingly, this argument is rejected.

Next, the EEOC, citing *Broussard v. First Tower Loan, LLC*, 135 F.Supp.3d 540, 548 (E.D. La. 2015), argues that its involvement in the case reflects a determination that this case involves "sufficient issues of general public importance to warrant expenditure of taxpayer dollars." Doc. #16 at 12. In *Broussard*, the district court held that the EEOC's involvement in an employment case suggested that the case raised issues of general public importance which overrode any local interest of the district where the allegedly discriminatory events occurred.

---

[9] According to the complaint, Faurecia operates a facility in Cleveland, Mississippi, a city in the Northern District. However, the EEOC did not argue that the Cleveland facility supports a local interest.

12

135 F.Supp.3d at 548.

Other than *Broussard*, this Court is not aware of any other decision which has weighed the local interest referenced by factor six against a more generalized local interest, even when the EEOC is a party. Indeed, numerous courts have recognized local interests in actions brought by the EEOC. *See, e.g., E.E.O.C. v. Fort Worth Ctr. of Rehab.*, No. 3:13-cv-1736, 2013 WL 5707848, at *4 (N.D. Tex. Oct. 18, 2013) ("The Court finds that the local interest in this case favors the Fort Worth Division because it is the location of the alleged discrimination."); *E.E.O.C. v. Outokumpu Stainless, USA, LLC*, No. 2:15-cv-405, 2015 WL 5685240, at *6 (M.D. Ala. Sep. 25, 2015) ("There is little to no public interest in having this case decided in the Middle District of Alabama because this forum has no connection to the case, but there is a very strong public interest in having the case decided in the Southern District of Alabama where the alleged discrimination occurred, and where the Defendant and its employees are located."). This Court will follow the weight of authority and hold that the local interest favors transfer in an employment discrimination case where, as here, the discriminatory events occurred, and the charging parties reside, in the transferee district.

### 7. Factors 7 and 8: familiarity with governing law and avoidance of conflict of laws

The parties and this Court agree that Factor 7 and Factor 8 are both neutral in this case.

### 8. Balancing

In sum: (1) the first factor (access to books and documents) and the third factor (cost of attendance of willing witnesses) weigh slightly in favor of transfer; (2) the sixth factor (local interest) weighs in favor of transfer; and (3) the remaining factors are neutral. In balancing these factors, the Court notes that three of the four "venue factors" in the special venue statute (where the wrongful employment action was allegedly committed, the location of the relevant

13

employment records, and where the aggrieved person would have worked but for the wrongful employment action) lean toward transfer to the Southern District.[10] Under these circumstances, the Court concludes that Faurecia has sustained its burden of showing 28 U.S.C. § 1404(a) that a transfer to the Southern District is clearly more convenient. Accordingly, the motion to transfer will be granted.

### III
### Conclusion

For the reasons above, Faurecia's motion to transfer [11] is **GRANTED**. The Clerk of the Court is **DIRECTED** to transfer to this case to the Southern District of Mississippi.

**SO ORDERED**, this 19th day of September, 2017.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[10] The fourth "venue factor" – Faurecia's principal place of business, which is Illinois – is neutral.